UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNIVERSITY SPINE CENTER, on
assignment of Michael H., and FIRST
ASSIST NJ, LLC, on assignment of
Michael H.,

    Plaintiffs,

v.

ANTHEM BLUE CROSS OF
CALIFORNIA, QUALCARE INC., and
SILGAN CONTAINERS
CORPORATION

    Defendants.

Civ. No. 19-12639 (KM) (JBC)

OPINION

### KEVIN MCNULTY, U.S.D.J.:

Plaintiffs University Spine Center and First Assist NJ LLC sued Anthem Blue Cross Life and Health Insurance Company under the Employee Retirement Income Security Act of 1974 ("ERISA"). They seek recovery of approximately $60,000 that they incurred while performing spinal surgery on patient Michael H. in 2016.

Now before the Court is Anthem's motion to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6). (DE 21).[1] For the following reasons, the motion is **GRANTED**, without prejudice.

### I. BACKGROUND

Solely for purposes of this motion, the allegations in the complaint are assumed to be true and all inferences are drawn in favor of the plaintiff.

---

[1] "DE __" refers to the docket entries in this case. "Compl. __" refers to the allegations in the complaint.

## A. The Parties

Plaintiff University Spine Center ("USC") is a medical practice consisting of spine surgeons and related healthcare practitioners. (Compl. ¶ 2). USC is located in Passaic County, New Jersey. (Compl. ¶ 2). Plaintiff First Assist NJ LLC is a medical practice that also consists of spine surgeons and related healthcare practitioners. (Compl. ¶ 3). First Assist is located in Union County, New Jersey. (Compl. ¶ 3).

Defendants are Anthem Blue Cross Life and Health Insurance Company,[2] Qualcare, Inc., and Silgan Containers Corporation. (*See generally* Compl.). All defendants conduct business in New Jersey. (Compl. ¶ 6).

## B. Facts

On November 6, 2015, USC and First Assist surgeons conducted spinal surgery on patient Michael H. at Robert Wood Johnson University Hospital in Rahway, New Jersey. (Compl. ¶ 9 & 10; DE 1-1). At the time, Michael H. had an ERISA-qualified employee benefit plan that reimbursed out-of-network services at "usual and customary rates." (Compl. ¶¶ 8 & 14; DE 1-4).

After the surgery, USC and First Assist billed Defendants $129,734 for the surgery. (Compl. ¶ 11; DE 1-2). Those costs are similar to those charged by other providers in the area. (Compl. ¶ 12). However, Defendants reimbursed USC and First Assist less than $3000. (Compl. ¶ 13). USC and First Assist exhausted all administrative remedies before filing this federal lawsuit. (Compl. ¶ 7).[3]

---

[2] Anthem's full corporate name is "Anthem Blue Cross Life and Health Insurance Company," but the company was inaccurately pled as "Anthem Blue Cross of California." (DE 21-3 at 1).

[3] The complaint contains relatively few details. The factual recitation, in its entirety, reads:

> 8. Upon information and belief, at all material times Patient had health insurance by way of an ERISA governed employee welfare benefit plan (the "Plan").

2

## C. Procedural History

USC and First Assist filed this lawsuit on May 17, 2019. (DE 1). They claim that defendants Anthem Blue Cross of California, Qualcare, Inc.,[4] and Silgan Containers Corporation violated the Employee Retirement Income Security Act of 1974 ("ERISA") by under-reimbursing them for the costs of Michael H.'s surgery. (DE 1). Michael H. is not a party to this lawsuit. (DE 1).

> 9. On November 6, 2015 medical practioners [sic] at University Spine and First Assist NJ, LLC provided medically necessary and reasonable services to Michael [H.] ("Patient"). See [(DE 1-1)].
>
> 10. Specifically, on November 6, 2015, Patient underwent a lumbar laminectomy and diskectomy at the L4-L5 vertebrae. See [(DE 1-1)].
>
> 11. Subsequently, HICFs [presumably "health insurance claim forms"] were submitted to Defendants or its agent for an amount totaling $129,734.00 for the treatment/services/supplies discussed above. [(DE 1-2)].
>
> 12. The charges for the services performed by University Spine and First Assist and other medical professionals at University Spine and First Assist charges were in line with other similar providers in their geographic area.
>
> 13. Defendants, however, remitted less than $3,000.00, for the above-referenced treatment. See **EOBs attached as** [(DE 1-3)].
>
> 14. According to the plan documents, out-of-network services are to be reimbursed at usual and customary rates. See [(DE 1-4)].
>
> 15. Based upon Plaintiff's Counsel's research, readily available databases, and common sense it is readily apparent that reimbursing less than $3,000.00 for, inter alia, a lumbar laminectomy and diskectomy at the L4-L5 vertebrae is not within the reasonable and customary charge for providers in the geographic area of Plaintiff.
>
> 16. In fact, according the Plaintiffs' Counsel's research Defendants underpaid their reimbursement of CPT Codes 63047 and 69990 by over $60,000.00 for both the primary and assistant surgeon claims.
>
> 17. Accordingly, Patient brings this action for the recovery of the balance of benefits due to Patient under the Plan for the treatment rendered to him by University Spine and First Assist NJ, LLC.

(Compl. (emphasis in original)).

---

[4] On July 24, 2019—with the parties' stipulation—the case was dismissed without prejudice as to Qualcare. (DE 20).

On August 21, Anthem filed this motion to dismiss the complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). (DE 21).

## II. DISCUSSION AND ANALYSIS

Anthem moves to dismiss the complaint on four grounds. Anthem argues that (1) Plaintiffs have not pled that they have standing to bring ERISA claims; (2) Plaintiffs failed to specifically plead how the employee-benefit plan was breached; (3) Plaintiffs failed to allege that they exhausted all administrative remedies before filing this lawsuit; and (4) the complaint is time-barred by the limitation period specified in the plan. Because I find that Plaintiffs have not alleged that they have standing to bring this action and have not sufficiently pled allegations to state an ERISA claim, I do not reach the other issues.

### A. Standard of Review

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & the Trs. Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the

4

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

The Court in considering a Rule 12(b)(6) motion is confined to the allegations of the complaint, with narrow exceptions:

> Although phrased in relatively strict terms, we have declined to interpret this rule narrowly. In deciding motions under Rule 12(b)(6), courts may consider "document[s] integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original), or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

*In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016); *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (quoting *In re Burlington Coat Factory*, 114 F.3d at 1426); *Pension Ben. Guar. Corp., Inc.*, 998 F.2d at 1196.

### B. ERISA

#### 1. Standing to Sue

Plaintiffs have not alleged facts to support an inference that they have standing pursuant to ERISA § 502(a) to sue Anthem for payment of services rendered to Michael H. Section 502(a) of ERISA empowers "a participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan." ERISA § 502(a), 29 U.S.C. 1132(a); *see also Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004). The statute defines "participant" as follows:

> ... any employee or former employee of an employer, or any member or former member of an employee organization, who is or

5

may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

ERISA § 3(7); *see also* 29 U.S.C. § 1002(7). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." ERISA § 3(8); *see also* 29 U.S.C. § 1002(8). Healthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary. *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014).

The parties dispute whether there was a valid assignment, *i.e.*, whether Plaintiffs have derivative standing to sue on the plan on behalf of Michael H. Under Third Circuit precedent, an assignment gives a healthcare provider standing to sue the insurance company for underpayment under ERISA § 502(a):

> [W]hen a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA § 502(a). An assignment of the right to payment logically entails the right to sue for non-payment. . . . After all, the assignment is only as good as payment if the provider can enforce it.

*N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372–73 (3d Cir. 2015); *see also Franco v. CIGNA*, 647 F. App'x 76, 81–82 (3d Cir. 2016) (same); *Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 889 (5th Cir. 2003) (holding that an assignment reading "I hereby assign payment of hospital benefits directly to Mississippi Baptist Medical Center herein specified and otherwise payable to me" encompassed the right to sue the insurer); *I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt.*, 182 F.3d 51, 54 n.3 (1st Cir. 1999) (holding that an assignment of the right to payment only "easily clear[ed]" the low hurdle of a "colorable claim" for derivative standing, and the argument that an

assignment to receive payment did not include the right to file suit "wrongly conflate[d] two distinct inquiries" as to standing and scope).

In *North Jersey Brain & Spine Center v. Aetna, Inc.*, the Third Circuit found that the following language, signed prior to surgery, constituted an assignment that was sufficient to grant the healthcare provider, New Jersey Brain & Spine Center ("NJBSC") standing to sue under ERISA:

> I authorize [NJBSC] to appeal to my insurance company on my behalf. . . . I hereby assign to [NJBSC] all payments for medical services rendered to myself or my dependents.

801 F.3d 369, 371–73 (3d Cir. 2015).

In *University Spine Center, o/b/o Kim. W. v. Anthem Blue Cross Blue Shield*, No. 17-9108 (D.N.J. July 5, 2018) [hereinafter *Kim W.*], I determined that an "Assignment and Release"—signed prior to treatment—was sufficiently similar and therefore conferred standing upon the healthcare provider. I did not credit the insurer's argument that that in order to validly confer standing an assignment must take place *post*-treatment:

> I do not agree with Anthem BCBS that additional requirements of specificity must be met under the circumstances. In particular, Third Circuit precedent does not squarely require a post-treatment assignment document, additional text specifying the scope of assignment, or an identification of the insurer by name in the text of the assignment. Nor is there a meaningful distinction to be drawn between the right to receive payment and the right to sue if it is not received; the Third Circuit has held explicitly that "[a]n assignment to receive payment of benefits necessarily incorporates the right to seek payment." *N. Jersey Brain & Spine Ctr.*, 801 F.3d at 371–73 (citing *I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.*, 7 F. Supp. 2d 79, 84 (D. Mass. 1998)).

(*Kim W.* at 8–9).

In this case, we need not deal with such subtleties. Plaintiff health care providers have failed to allege *at all* that Michael H. assigned them the right to pursue on his behalf. This is not a matter where, as in *North Jersey Brain & Spine Center* and *Kim. W.*, the dispute concerns the timing of the assignment. Instead, the healthcare providers—USC and First Assist—altogether failed to

7

allege facts from which standing could be inferred. Anthem rightly distinguishes this dispute from *North Jersey Brain & Spine Center* and *Kim. W.* because here, the complaint does not on its face allege that an assignment occurred—either pre- or post-treatment. Indeed, Plaintiffs allege only that "*Patient* brings this action," which from the face of the complaint does not appear to be true. (Compl. ¶ 17). Michael H. is a not a party to this lawsuit, and the complaint is otherwise silent on the assignment issue. Because the complaint does not allege that Michael H. assigned Plaintiffs the right to stand in his shoes, Plaintiffs do not have standing to bring this action.

And there is more—or less. Plaintiffs have not even alleged the existence of a relationship between Anthem and the patient. The unstated premise of this lawsuit seems to be that Anthem underwrote Michael H.'s insurance policy and then refused to fully reimburse USC and First Assist after they provided medical care to him. That inference remains speculative, however, because Plaintiffs have not alleged any facts that would establish such a relationship. The complaint merely alleges that "Defendants were present and engaged in significant activities in the State of New Jersey," that "Patient had health insurance by way of an ERISA governed employee welfare benefit plan." It does not even allege *which* ERISA plan the patient was a member of. (Compl. ¶¶ 4 & 8–16). The factual recitation concludes that, "Patient brings this action for the recovery of the balance of benefits due to Patient under the Plan for the treatment rendered to him by University Spine and First Assist NJ, LLC." (Compl. ¶ 17). The complaint fails to allege that Anthem was in any way required to bear the cost of Michael H.'s surgery. This is taking boilerplate pleading too far.

### 2. Sufficiency of the Pleadings

Plaintiffs also have failed to plead a plausible claim for additional reimbursement under the plan. The District of New Jersey has dismissed ERISA claims where plaintiffs failed to cite to specific plan provisions: "It is the Plaintiff's burden of proof to have the plan documents and cite to specific plan

8

provisions when filing a civil complaint to obtain ERISA benefits." *Ruiz v. Campbell Soup Co.*, No. 12-6131, 2013 WL 1737242 at *3 (D.N.J. Apr. 22, 2013) (citing *Broad St. Surgical Center, LLC v. UnitedHealth Grp., Inc.*, No. 11-2775, 2012 WL 762498 at *15 (D.N.J. Mar. 6, 2012)).

> A plaintiff seeking to recover under section 502(a)(1)(B) must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan" and that the plan administrator improperly denied him or her those benefits. *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006). "ERISA's framework ensures that employee benefit plans be governed by written documents and summary plan descriptions, which are the statutorily established means of informing participants and beneficiaries of the terms of their plan and its benefits." *In re Unisys Corp. Retiree Medical Benefit ERISA Litigation*, 58 F.3d 896, 902 (3d Cir. 1995).

*Broad St. Surgical Ctr.*, 2012 WL 762498 at *13; *see also Manning v. Sanofi-Aventis, U.S. Inc.*, No. 11-1134, 2012 WL 3542284 at *3 (M.D. Pa. Aug. 14, 2012) ("To state a claim under § 502(a)(1)(B), plaintiff must allege that she was eligible for benefits under the Plan, that defendant wrongfully denied her benefits and that in doing so, defendant violated § 502(a)(1)(B).").

Plaintiffs fail to meet this standard. As discussed previously, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plain language of ERISA section 502(a)(1)(B) requires a plaintiff to demonstrate his or her entitlement to "benefits due to him under the terms of his plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). To that end, the Third Circuit has explained that, "to assert an action to recover benefits under ERISA, a plaintiff must demonstrate that 'he or she [has] a right to benefits that is legally enforceable against the plan.'" *Saltzman v. Indep. Blue Cross*, 384 F. App'x 107, 111 (3d Cir. 2010) (quoting *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006)).

The complaint lacks the allegations necessary to set forth an ERISA claim. Plaintiffs state in conclusory terms that they have been underpaid.[5] And while the complaint identifies a disparity between the amount claimed by Plaintiffs and the amount of Anthem's reimbursement, that disparity alone does not properly support a claim for relief. Plaintiffs do not point to any specific plan provision that entitles them to the greater amount.

Several courts have dismissed similarly vague ERISA claims. In *Piscopo v. Pub. Serv. Elec. & Gas Co.*, the court dismissed the plaintiff's ERISA section 502(a)(1)(B) claim for wrongful denial of pension and retirement benefits, where, the plaintiff failed to identify "any provision of [the plan] suggesting he is entitled to pension or retirement contributions nor has he alleged any facts about the plan." No. 13-552, 2015 WL 3938925 at *5 (D.N.J. June 25, 2015), *aff'd*, 650 F. App'x 106 (3d Cir. 2016). In *McDonough v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, the court dismissed the plaintiff's claim for underpayment of benefits under ERISA section 502(a)(1)(B), where the complaint "fail[ed], under Rule 8(a), to give notice of what [the defendant] did in contravention of the terms of the health plan and/or in violation of ERISA." No. 09-571, 2009 WL 3242136 at *3 (D.N.J. Oct. 7, 2009). In *Professional Orthopaedic Associates, PA v. 1199 SEIU National Benefit Fund*, the Second Circuit affirmed the district court's dismissal of the plaintiff's ERISA section 502(a)(1)(B) claim where the complaint alleged that the defendant was "required to pay the 'usual, customary and reasonable rates' for services rendered by the out-of-network providers . . . but it fail[ed] to identify any provision in the plan documents requiring the [defendant] to pay such rates." 697 F. App'x 39, 41 (2d Cir. 2017).

---

[5] "Based upon Plaintiff's Counsel's research, readily available databased, and common sense it is readily apparent that reimbursing less than $3,000.00 for, *inter alia*, a lumbar laminectomy and diskectomy at the L4-L5 vertebrae is not within the reasonable and customary charge for providers in the geographic area of Plaintiff." (Compl. ¶ 15).

It is a plaintiff's duty to cite specific plan provisions that entitle it to recovery. USC and First Assist have not done so here.

### 3. Statute of Limitations

Because I dismiss this case on other grounds, I do not now reach the statute-of-limitations issue. Because the dismissal is without prejudice, I briefly address the issue for the orientation of the parties in connection with any amended complaint.

ERISA provides that a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). The statute, however, does not prescribe any limitations period for filing such an action. When a statute does not provide a limitations period for filing a claim, courts borrow the statute of limitations from the most analogous state-law claim, which in this case is breach of contract. *See Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 305–06 (3d Cir. 2008). The default limitations period for Plaintiffs' claim is six years, which is the deadline for filing a breach of contract action under New Jersey law. *See* N.J. Stat. Ann. § 2A:14-1. However, because an ERISA plan is a form of contract, parties may agree to a shorter limitations period, so long as the contractual period is not unreasonable. *See Hahnemann Univ. Hosp.*, 514 F.3d at 306.

ERISA grants the Department of Labor the power to promulgate regulations governing the claims-procedure process. *See* 29 U.S.C. § 1133. Under the auspices of that authority, the Department promulgated a regulation that provides that plan administrators shall provide a claimant with written notice of an adverse benefit determination. *See* 29 C.F.R. § 2560.503-1(g)(1). The regulation also requires the plan administrator to set forth a "description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination." *Id.* § 2560.503-1(g)(1)(iv).

Here, the plan's limitations provision reads as follows:

> No lawsuit or legal action of any kind related to a benefit decision may be filed by you in a court of law or in any other forum, unless it is commenced within three years of the *Plan*'s final decision on the claim or other request for benefits. If the *Plan* decides an appeal is untimely, the *Plan*'s latest decision on the merits of the underlying claim or benefit request is the final decision date. You must exhaust the *Plan*'s internal Appeals Procedure but not including any voluntary level of appeal, before filing a lawsuit or taking other legal action of any kind against the *Plan*.

(DE 21-2 at 15) (italics in original). From the face of the complaint, Plaintiffs' claim appears to have been filed outside the applicable three-year window and is therefore time-barred. By January 8, 2016, Anthem had processed the claim, meaning that the deadline within which to file a lawsuit was January 8, 2019. However, Plaintiffs did not bring this lawsuit until May 17, 2019—more than three years after the adverse benefit determination and outside the time window specified by the plan.

However, the Third Circuit has taken a strict approach to the issue of when the running of an ERISA plan's limitation period is triggered. In *Mirza v. Insurance Administrators of America, Inc.*, for example, the Third Circuit held that "[w]hen a letter terminating or denying Plan benefits does not explain the proper steps for pursuing review of the termination or denial, the Plan's time bar for such a review is not triggered." 800 F.3d 129, 137 (3d Cir. 2015) (alteration in original) (quoting *Epright v. Envtl. Res. Mgmt., Inc. Health & Welfare Plan*, 81 F.3d 335, 342 (3d Cir. 1996)).

Plaintiffs argue that "there is absolutely no mention of any lawsuit initiation deadline—much less one imposed by the Plan—for seeking judicial review" in Anthem's denial-of-benefits letter. (DE 24 at 8). Anthem notes that the complaint does not allege the existence of a plan administrator or an adverse benefit determination. (DE 25 at 7–9). Indeed, the complaint contains neither—and for *Mirza* to apply, both elements must be alleged. *See* 800 F.3d 137–38.

Accordingly, if Plaintiffs move to file an amended complaint, the parties are advised to brief the time-limitation issue and, in particular, to address whether *Mirza* applies.

### III. CONCLUSION

For the reasons set forth above, the motion to dismiss is **GRANTED**. The dismissal is without prejudice to the submission, within 30 days, of a properly supported motion to amend the complaint.

A separate order will issue.

Dated: February 18, 2020

**Hon. Kevin McNulty**
**United States District Judge**

13